UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG

**BERNARD L. GREER,**
   **Plaintiff,**

**v.**               **Case No. 1:16-CV-142**
                    **(JUDGE KEELEY)**

**STATE OF WEST VIRGINIA,**
   **Defendant.**

## REPORT AND RECOMMENDATION THAT DEFENDANT'S MOTION TO DISMISS BE GRANTED

This matter is before the Court pursuant to Defendant State of West Virginia's ("State") Motion to Dismiss filed on September 12, 2016. (ECF No. 17). United States District Judge Irene M. Keeley referred this case to the undersigned on June 26, 2016. On September 28, 2016, Plaintiff filed a *pro se* response in opposition (ECF No. 23). On October 12, 2016, the State filed a Reply to Plaintiff's response. (ECF No. 30). On January 4, 2017, the parties were given an opportunity to supplement their briefs (ECF No. 32). Both Plaintiff and Defendant filed their supplemental briefs on January 27, 2017 (ECF Nos. 37 and 39, respectively). Sur-replies for both parties were also filed. (ECF Nos. 40 and 41-1, respectively). Accordingly, this matter now being fully briefed, and it appearing that oral argument would not significantly aid the undersigned, Defendant's motion is now ripe for this Report and Recommendation.

### I.   Background

This case arises out of a distinction between federal and state law prohibiting convicted felons from possessing firearms. Specifically, 18 U.S.C. § 921 contains an exception to the

1

general felon dispossession law for antique firearms.[1] 18 U.S.C. § 921(a)(3)(D) (2017). The applicable West Virginia Code section (§ 61-7-7(b)(2)(11)) contains no such exception, and thus prohibits felons from possessing any firearm under state law.[2] W. Va. Code Ann. § 61-7-7(2)(11) (LexisNexis 2017).

### 1. Plaintiff's Complaint

Plaintiff alleges that W. Va. Code § 61-7-7(a)(1), "in concert with" § 61-7-2(11), is unconstitutional because it violates 1) the Supremacy Clause; 2) the Second and Fourteenth Amendments; 3) the Ninth Amendment; and 4) the Commerce Clause, Privileges and Immunities Clause, and Equal Protection Clause. (ECF No. 1).

### 2. State's Motion to Dismiss

The State contends that pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Plaintiff's complaint must be dismissed for failure to state any claim upon which relief can be granted (ECF No. 17). As to the Supremacy Clause, the State argues that Plaintiff's claim in Count I fails to satisfy the requirements for express preemption, field preemption, or basic conflict preemption principles. Id. at 1-2. As to the Second Amendment, the State argues that Plaintiff's claim in Count II is precluded by District of Columbia v. Heller, which explicitly found the "longstanding prohibition on the possession of firearms by felons" to be a "presumptively lawful regulatory measure" unaffected by the holding in that case. 554 U.S. 570, 626-27, n.26 (2008); (ECF No. 17. at 2). The State argues that Plaintiff's claim in Count III is unsupported by any case law, and numerous circuits have in fact held that felon dispossession laws do not violate the Ninth Amendment. Id. at 3. As to Count IV, the State contends that West

---

[1] 18 U.S.C. § 921(a)(3) provides in relevant part that "[t]he term "firearm" means (A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive . . . [s]uch term does not include an antique firearm."
[2] W. Va. § 61-7-2(11) defines "'[f]irearm' [as] any weapon which will expel a projectile by action of an explosion."

Virginia's felon dispossession law does not violate 1) the "negative Commerce Clause" under Fourth Circuit precedent; 2) the Privileges and Immunities Clause because it applies only to a narrow class of uniquely federal rights that does not include the right to bear arms; and 3) the Equal Protection Clause because felons are not a suspect class and a rational basis is easily satisfied. Id. at 3-4.

### 2.  Plaintiff's Response in Opposition

Plaintiff contends in his response that federal case law cited by the State is inapplicable to this case because the federal law all such holdings are based upon does not apply to *antique firearms* by virtue of the exception in 18 U.S.C. § 921(a)(3) (ECF No. 23 at 1-2). Plaintiff further contends that antique firearms have not been used to perpetuate gun violence, which was the purpose for felon dispossession laws. Plaintiff reaffirms his supremacy argument, and argues that "West Virginia has no legal standing to statutorily supersede privileges and immunities either created by the United States Constitution or through federal legislation." Id. at 2. Plaintiff lastly contends that interstate commerce is a uniquely federal right. Id. at 3.

### 3.  State's Reply to Plaintiff's Response

The State reiterated in its Reply to Plaintiff's Response that Plaintiff has failed to state a claim upon which relief can be granted, and states that Plaintiff has done nothing more than "ask[] this Court to rewrite West Virginia law to allow him, as a convicted felon, to possess an 'antique' firearm." (ECF No. 30 at 1). The State reiterates that Plaintiff's first claim fails because the West Virginia felon dispossession law is neither in conflict with, nor preempted by, federal law. Id. at 2. The State asserts that Plaintiff's second claim fails because the West Virginia felon dispossession law does not violate the Second Amendment. Id. at 4.  The State argues that Plaintiff's third claim must fail because the West Virginia felon dispossession law does not

violate the Ninth Amendment. Id. at 5. Lastly, the State contends that Plaintiff's fourth claim fails because West Virginia's felon dispossession law does not violate the Privileges and Immunities, Equal Protection, or Commerce Clauses. Id. at 7.

On January 4, 2017, the undersigned issued an Order directing the parties to supplement their briefs with any arguments they wished to present specifically with regard to antique firearms relevant to intermediate scrutiny. (ECF No. 32).

### 4. Plaintiff's Supplemental Brief

Plaintiff's response consisted largely of an explanation as to how antique firearms function, distinguishing them from modern firearms. (ECF No. 37).

### 5. Defendant's Supplemental Brief

Defendant argued that Plaintiff's challenge was facial and not as-applied, and that a rational basis standard was appropriate. Defendant concluded in a footnote:

> If this Court were to conclude that a means-end analysis is necessary, the State will show on a motion for summary judgment that West Virginia's felon dispossession law, which prohibits felons from possessing a firearm, satisfies intermediate scrutiny given West Virginia's substantial interest in protecting public safety and preventing crime.

(ECF No. 39 at 8).

## II. Standard

A Motion to Dismiss should not be granted if there exists any plausible claim that would entitle Plaintiff to relief. Fed. R. Civ. P. 12(b)(6). The purpose of a motion to dismiss under Rule 12(b)(6) is to test the formal sufficiency of the claim; it is not a procedure for resolving contested facts or meritorious disagreements of the case. 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (3d ed. 1998). For purposes of a 12(b)(6) motion to dismiss, the court must construe the complaint in the light most favorable to the party making the

claim, in determining whether it is a statement of a properly pled claim under Federal Rule of Civil Procedure 8(a). Id. at § 1357.

*Pro se* complaints are liberally construed by the court. See Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). See also Erickson v. Pardus, 551 U.S. 89, 94 (2007); Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 2007). While the plaintiff's allegations are assumed to be true, this Court may not ignore a clear failure in the pleading to allege facts that set forth a claim. Erickson, 551 U.S. at 93; See Weller v. Dep't of Soc. Servs., 901 F.2d 387, 390-91 (4th Cir. 1990). This Court may not rewrite a complaint to include claims that were never presented, construct the plaintiff's legal arguments for him, or "conjure up questions never squarely presented" to the court. Barnett v. Hargett, 174 F.3d 1128, 1133 (10th Cir. 1999); Beaudett, 775 F.2d 1274, at 1278.

### III.   Discussion

**1. Nature of Plaintiff's Claim**

At the outset, the undersigned notes that none of the facts Plaintiff alleges appear to be in dispute. Rather, it is the Plaintiff's interpretation of the law that is the focus of the Defendant's motion to dismiss. Before that is reached, however, the nature of Plaintiff's claim is clarified. Defendant "respectfully suggest[ed] that Fourth Circuit Precedent requires that no application of scrutiny is necessary in this case because Greer brings only *a facial challenge* to the West Virginia felon dispossession statute." (ECF No. 39 at 2) (emphasis in original). Plaintiff is correct as to the former, but incorrect as to the latter.

It is unnecessary to rewrite Plaintiff's complaint, construct his legal arguments for him, or create questions not presented; rather, Plaintiff's complaint is sufficiently understood, requiring only that the court explain it to the Defendant. Here, Plaintiff raises an as-applied – not

5

facial – challenge to the State's felon dispossession statute. The Defendant characterizes Plaintiff's claim as asserting that West Virginia's felon dispossession law "facially violates the Second Amendment." ECF No. 18 at 6. The State argues that "[t]his facial challenge [] is squarely foreclosed by [Heller]." (ECF No. 18 at 6).

To prevail on a facial challenge, a plaintiff must establish that "no set of circumstances exist under which the [law] would be valid. U. S. v. Salerno, 481 U.S. 739, *745; 107 S.Ct. 2095, **2100; 95 L.Ed.2d 697 (1987). That is, as Defendant itself cites, "[A] litigant asserting a facial challenge contends that a statute always operates in an unconstitutional manner:" (ECF No. 39 at 2) (citing Doe v. Virginia Dept. of State Police, 713 F.3d 745 (4th Cir. 2013)). That is clearly not the nature of Plaintiff's claim here.

As-applied challenges are most commonly brought as applied to a particular person, as the challenge was in Doe. However, as-applied challenges can be other iterations of a portion – rather than the entirety - of a law, such as to one particular item out of many. See, e.g., United States v. Forbes, 806 F. Supp. 232 (D. Colo. 1992) (finding the Analogue Act unconstitutional as applied only to one substance, and not *all* analogue substances); United States v. Klecker, 348 F.3d 69 (4th Cir. 2003) (likewise considering and rejecting an as-applied challenge to one particular substance out of many prohibited by the Act).

Plaintiff does not argue that there are *no* circumstances under which West Virginia's felon dispossession statute is constitutionally valid, nor could be reasonably be interpreted to be. Plaintiff does not argue that the law is unconstitutional as applied to the vast majority of firearms. Rather, Plaintiff argues narrowly that the law is unconstitutional as applied to *antique firearms only*.

Defendant next cites United States v. Moore, 666 F.3d 313 (4th Cir. 2012) in an attempt to characterize Plaintiff's challenge as facial by comparison (ECF No. 39 at 3-4); that also fails. Defendant argues that Plaintiff's "broad, non-specific argument is indistinguishable from the facial argument in *Moore*." Id. at 4. Plaintiff's claim is easily distinguishable from the facial challenge in Moore because, as explained above, Plaintiff is not challenging the constitutionality of the statute in its entirety as applied to any and all firearms, but merely as it applies to one specific type.

The Defendant lastly argues that Plaintiff's claim must be facial because Plaintiff has not objected to the Defendant's characterization of his claim as a facial challenge in its briefs. (ECF No. 39 at 4). How this *pro se* Plaintiff has responded to the Defendant's characterization is not a sufficient basis on which this court should convert Plaintiff's clearly as-applied claim to a facial claim. As explained, Plaintiff's claim is significantly narrow in scope, and does not challenge West Virginia's felon dispossession law as applied to most firearms. Plaintiff cannot fairly be interpreted to argue that there are no set of circumstances under which the law is constitutional; Plaintiff's challenge is thus properly interpreted as - and considered - as-applied.[3]

### A. First Cause of Action: Supremacy Clause

Plaintiff first argues in No. 19 of his *pro se* complaint that "West Virginia statute §61-7 7(a)(1) in concert with §61-7-2(11), are [sic] **contrary** to 18 USC §922 (g) together with provisions of 18 USC §§921(a)(3) and 16). The state law cannot constitutionally stand." Pl.'s Compl. 6, ECF No. 1 (emphasis in original). Plaintiff concludes that a "direct and positive

---

[3] Further, even if Plaintiff did intend to raise a facial challenge in addition to an as-applied challenge, it would indisputably fail. "Under the well recognized standard for assessing a facial challenge to the constitutionality of a statute, the Supreme Court has long declared that a statute cannot be held unconstitutional if it has a constitutional application." U.S. v. Moore, 666 F.3d 313 (2012). In either event, a facial challenge need not be evaluated at any length.

7

conflict between the state and federal law" exists, and that "both cannot consistently stand together."  Plaintiff cites 18 U.S.C. § 927, which provides:

> No provision of this chapter shall be construed as indicating an intent on the part of the Congress to occupy the field in which such provision operates to the exclusion of the law of any State on the same subject matter, unless there is a direct and positive conflict between such provision and the law of the State so that the two cannot be reconciled or consistently stand together.

Plaintiff concludes that, by virtue of the conflict he perceives between the laws, federal firearm laws preempt West Virginia firearm laws. Had there actually been a conflict, that could possibly have been the case. However, Plaintiff misunderstands the concept.

Preemption can be express or implied. Express preemption occurs when a federal law expressly preempts a state or local law. Jones v. Rath Packing Co., 430 U.S. 519, 530-531, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977) (quoting such language in the Federal Meat Inspection Act, which provided that "…requirements in addition to, or different than, those made under this Act may not be imposed by any State"). In the instant case, there is no express preemption as the provisions of 18 USC §§921(a)(3) and (16) do not contain any clauses or language that expressly preempts state or local law. In fact, it is the opposite.

Field preemption occurs where a federal law or regulation is so ubiquitous as to reasonably infer that Congress "left no room for the States to supplement it." See Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 (1947). Plaintiff asserts that "federal law excludes the state law in the field in which both operate," and cites 18 U.S.C. § 927, which provides:

> No provision of this chapter shall be construed as indicating an intent on the part of the Congress to occupy the field in which such provision operates to the exclusion of the law of any State on the same subject matter, unless there is a direct and positive conflict between such provision and the law of the State so that the two cannot be reconciled or consistently stand together. 18 U.S.C. § 927.

8

(ECF No. 1 at 5). As evidenced by the plain text of 18 U.S.C. § 927, Congress expressed only a clear intent *not* to preempt state and local law on this issue. Accordingly, there is no field preemption by operation of 18 U.S.C. § 927.

Second, implied preemption can occur where a state law or regulation hampers the achievement of federal objectives. See Hines v. Davidowitz, 312 U.S. 52, 67 (1941). Plaintiff has not articulated any specific federal objective that is hampered by his inability to possess an antique firearm, nor are any apparent. Implied preemption can occur when an irreparable conflict between state and federal law exists, rendering compliance with both impossible. See Florida Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132, 142-143 (1963). Although Plaintiff asserts that there is a "direct and positive conflict" between the state and federal law on the subject of antique firearms, ECF No. 1 at 6, Plaintiff is mistaken. Plaintiff can easily comply simultaneously with both state and federal law by simply not possessing a firearm of any kind, antique or otherwise. As there is no preemption of any type, Plaintiff's first claim accordingly fails.

### B. Second Cause of Action: 2nd and 14th Amendments

Plaintiff alleges in his second claim "[v]iolation[s] of the Second and Fourteenth Amendments to the United States Constitution." (ECF No. 1). Plaintiff asserts that "[a]ntique firearms are constitutionally protected under the umbrella of the Second Amendment as many were the very type in usage at the time of its ratification." Id. Plaintiff contends that West Virginia's felon dispossession law, which provides no exemption for antique firearms, violates his Second Amendment right to "use antique firearms for lawful hunting and recreational activities." (ECF No. 1).

The State argues that Plaintiff's claim is precluded by District of Columbia v. Heller, which explicitly found the "longstanding prohibition[] on the possession of firearms by felons" to be a "presumptively lawful regulatory measure[]" unaffected by the holding in that case. 554 U.S. 570, 626-27, n.26 (2008); (ECF No. 17. at 2).

The United States Supreme Court has determined that state regulation of firearms is a reasonable exercise of state police power and an important way by which a state can protect its citizens. United States v. Cruikshank, 92 U.S. 542, 553 (1875) (describing Second Amendment right as "bearing arms for a lawful purpose," and states "were free to restrict or protect the right under their police powers."). See State ex rel. City of Princeton v. Buckner, 377 S.E.2d 139 (W. Va. 1988) (holding that "[t]he West Virginia legislature may, through the valid exercise of its police power, reasonably regulate the right of a person to keep and bear arms in order to promote the health, safety and welfare of all citizens of this State.").

While felon dispossession laws are "presumptively lawful regulatory measures" that governments may impose, Heller, 554 U.S. at 626-27, this wording fell short of conclusively declaring all law limited the possession of firearms lawful, in any circumstances. The Supreme Court thus did not completely foreclose the possibility that such a circumstance may exist or one day be found as it pertains to felons. The Fourth Circuit also recognized, as Defendant admits, "that an as-applied challenge could "*theoretically*" prevail." (ECF no. 39 at 6) (citing Moore). Nonetheless, Plaintiff's Second Amendment arguments in this case fail, for the following reasons.

### A. Scope of 2nd Amendment Rights

The Second Amendment provides, in relevant part, that "the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. Amend. II. The "core" of Second

Amendment protection applies to the right of "law-abiding, responsible citizens to use arms in defense of hearth and home." District of Columbia v. Heller, 554 U.S. 570, 628, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008). The Fourteenth Amendment "incorporates the Second Amendment right recognized in Heller," making it applicable to the states. McDonald v. City of Chicago, 561 U.S. 742, 778, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010). However, "[l]ike most rights, the right secured by the Second Amendment is not unlimited." Heller, 554 U.S. at 628. "The right to keep and bear arms is not 'a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose.'" Pohlabel v. State, 268 P.3d 1264 at *1266 (quoting McDonald's affirmation of limits articulated in Heller). Rather, the core protected right of the Second Amendment articulated in Heller belongs to "law-abiding, responsible citizen[s,] to possess and carry a weapon for self-defense." U.S. v. Chester, 628 F.3d 673. 683 (4th Cir. 2010).

### B. Standard for Evaluating 2nd Amendment Challenges

The Marzzarella two-step process adopted by the Fourth Circuit in United States v. Chester is the prevailing method by which claims alleging Second Amendment violations are evaluated. 628 F.3d 673 (4th Cir. 2010). At step 1, the court considered whether "the challenged law imposes a burden on conduct falling within the scope of the Second Amendment's guarantee." Id. at *680 (citing United States v. Marzzarella, 614 F.3d 85, 90 (3rd Cir. 2010)). If the court finds no burden has been imposed on conduct protected under the Second Amendment, the law is valid and the inquiry ends at step 1. If the challenged law is found to burden protected conduct, at step 2, "the court must evaluate the law under some form of means-end scrutiny. If the law passes muster under that standard, it is constitutional. If it fails, it is invalid." Marzzarella, 614 F.3d at 89. In Heller, the Supreme Court determined that the appropriate scrutiny must be more than rational basis, but stopped short of articulating a conclusive standard.

11

The Fourth Circuit subsequently determined that intermediate scrutiny is the appropriate level of scrutiny for Second Amendment challenges. U.S. v. Chester, 628 F.3d 673, 683 (4th Cir. 2010).

### i. Plaintiff Fails Step 1 Because His Desired Conduct Falls Outside the Scope of the 2nd Amendment's Guarantee

At step 1, the first question is whether the challenger is the type of person to whom the Second Amendment guarantees a right – a "law-abiding, responsible citizen." Chester, 628 F.3d at *680 ("[W]e are seeking to determine whether a person, rather than the person's conduct, is unprotected by the Second Amendment"). Thus, before reaching the purpose for the firearm is carried, a challenger must *first* demonstrate that he is a law-abiding citizen who has the right to begin with. Felons, even those whose felony convictions were for nonviolent crimes, unequivocally do not qualify. Moore, citing United States v. Torres-Rosario, 658 F.3d 110, 113 (1st Cir. 2011) (observing that "[a]ll of the circuits to face the issue post Heller have rejected blanket challenges to felon in possession laws" and citing cases from the Second, Third, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, and Eleventh Circuits) (internal quotations omitted). Statutes banning firearm possession by those with merely misdemeanor convictions for domestic violence misdemeanor have been upheld in this and other circuits as passing intermediate scrutiny, U.S. v Chester, 514 Fed.Appx. 393 (4th Cir. 2013), as have those merely subject to a domestic violence restraining order. U. S. v. Chapman, 666 F.3d 220 (4th Cir. 2011)

The Fourth Circuit has yet to address whether felon dispossession laws are constitutional as applied to antique firearms – nor, to the undersigned's knowledge, has any circuit. However, at least one court has. In Pohlabel, the Supreme Court of Nevada upheld Nevada's felon dispossession law as constitutional, even as applied to a "black powder rifle" consistent with the type of "antique" firearms Plaintiff here wishes to possess. 268 P.3d 1264 (Nev. 2012). Specifically, the Pohlabel Court found that the characteristics of a particular firearm and

arguments to pertaining how well they did – or did not - lend themselves to the perpetuation of gun violence are not reached when possessed by a felon, because there is no cognizable Second Amendment right in the first instance. Pohlabel, 268 P.3d at 1256 (rejecting Plaintiff's argument concerning black powder rifles, via expert testimony that "they must be loaded by hand each time a shot is fired, take at least 45 seconds to load, and are hard to conceal," that, given their limitations, black powder rifles pose little threat and should not, and constitutionally cannot, be forbidden to nonviolent felons like himself").

The challenged Nevada law in Pohlabel is similar to the challenged West Virginia law in the instant case. Both Nevada Revised Statute § 202.360(1)(a) and West Virginia Code § 61-7-7 prohibit felons from possessing *any* firearm whatsoever, and both provide remedies by which certain felons may restore Second Amendment rights. Neither statute identifies antique firearms - or any type of firearm - for that matter, as a separate or distinct category. Moreover, the statutory definitions of "firearm" provided by Nevada and West Virginia are similar. Nevada law provides: "[f]irearm means any device designed to be used as a weapon from which a projectile may be expelled through the barrel by the force of any explosion or other form of combustion." Pohlabel, 268 P.3d at 1267. (quoting statutory definition of "firearm" from Nev. Rev. Stat. § 202.253(2)(2017). West Virginia Code § 61-7-2(11) defines "firearm" as "any weapon which will expel a projectile by action of an explosion." W. Va. Code § 61-7-2(11) (2017). Any weapon that fits the definitions is a firearm under the law, and is thus possession of such firearm is prohibited to those with felonies.

By virtue of his status as a convicted felon, Plaintiff does not have a protected Second Amendment right to bear firearms – of any type. Because the inquiry stops there, it is unnecessary to apply a means-end analysis using intermediate scrutiny. As in Moore, Plaintiff

"undoubtedly flunks the 'lawabiding responsible citizen' requirement." 666 F.3d at 320. In addition, Plaintiff's criminal history raises the same concerns relevant to the State's interest here that have been held sufficient for even those with misdemeanor – not felony – convictions.

In the Circuit Court of Harrison County, West Virginia (Case No. 12-F-110), Petitioner was indicted on one count of robbery in the first degree, one count of kidnapping, one count of assault during the commission of a felony, and one count of possession with intent to deliver a controlled substance. The victim in his case testified at trial as to Plaintiff's actions.

> Trial testimony in this case shows that the events leading to the indictment occurred when police received a 911 call informing them that petitioner had been beating Tiffany Rollins in a parking lot in Clarksburg. At trial, Ms. Rollins testified that she and petitioner sold bath salts together. Ms. Rollins stayed at the home of an acquaintance the night prior to the events relevant to the indictment, after returning from an out-of-town trip with petitioner to retrieve bath salts that they transported in a backpack. The following morning, petitioner appeared at the residence and began beating Ms. Rollins, according to her testimony, then took at least forty dollars from her purse, dragged her to a car, forced her inside, then continued to beat and cut her. Ms. Rollins was pulled from the car by passersby, at which time petitioner got out of the car and walked away. Shortly afterward, petitioner was stopped by an officer and asked to empty his pockets. Petitioner produced six pre-packaged bags, each containing approximately one-half of a gram of bath salts. At trial, petitioner testified that the packages were for his personal use. Inasmuch as the trial evidence showed that petitioner admitted to the possession of several packages of bath salts—after Ms. Rollins testified that the two had a history of selling bath salts—we find that the evidence taken from petitioner's prior arrest was wholly unnecessary to the jury's finding of guilt.

State v. Greer, 2014 WL 6607465, Case No. 13-1259 (W.Va. Nov. 21, 2014). In addition to this incident, shortly before Plaintiff's trial, officers found knives, two loaded .45 caliber clips, and a firearm inside of a vehicle inside of which Plaintiff was found with seventy-nine bags of bath salts contained in a locked backpack. Id. Officers discovered these items while conducting a search after receiving a 911 call about a suspicious vehicle and reports that Plaintiff had been seen physically abusing his female partner in bath salt distribution. Id. at *2.[4] He was convicted

---

[4] "Prior to trial, the State provided notice that it intended to introduce evidence obtained during petitioner's prior arrest, only a few weeks prior to trial, when he was found to be in possession of 79 bags of bath salts contained in a

14

of Count Four after a jury trial.[5]

Even if he did not fail the test by virtue of his criminal history and undisputed history of violence, the distinction Plaintiff raises with regard to modern versus antique firearms does not sufficiently distinguish this challenge from others that have been conclusively rejected, as explained below.

### ii. Plaintiff's Challenge Is Not Outside the Realm of Ordinary Challenges

In order to succeed on an as-applied challenge, "a litigant claiming an otherwise constitutional enactment is invalid as applied to him must show that his factual circumstances remove his challenge from the realm of ordinary challenges." United States v. Moore, 666 F.3d at 319. In the instant case, Plaintiff's as-applied challenge to West Virginia Code § 61-7-7 relies heavily on the assumption that there is a meaningful distinction between antique and modern firearms, sufficient to remove his challenge from established precedent that have settled the question as to modern firearms. The undersigned cannot agree for the following reasons.

---

locked backpack. The court conducted a *McGinnis* hearing, at which details of the proffered 404(b) evidence were set forth as follows.

Sgt. Jeff Petroski of the Harrison County Sheriff's Department testified that he was dispatched some weeks earlier to do a "welfare check" on a car parked along the road. When he arrived, the driver started to pull away and Sgt. Petroski told him to stop. The officer saw nothing unusual about the vehicle or its tags or registration. As the officer approached, he was able to see inside the vehicle, and he saw a backpack and a kitchen spoon, which he viewed as drug paraphernalia. Petitioner was in the front passenger seat, his brother sat in the driver's seat, and a female "popped up" in the back seat. Sgt. Petroski ordered the female out of the car. He described her having "herky-jerky" movements, bloodshot eyes, and slurred speech. Sgt. Petroski then asked the men to get out of the car. When the driver opened the door, he saw a bag of syringes and a marijuana "bowl[.]" Upon searching the individuals, the officer also found knives, two loaded .45 caliber clips, and a firearm. Deputy William Cunningham appeared as backup. Among the evidence that Deputy Cunningham found were the two locked backpacks, which petitioner advised belonged to him. Upon obtaining a search warrant, Deputy Cunningham discovered 79 unopened bags of a substance. He wrote petitioner a property receipt, and released petitioner pending testing of the substance. Tests concluded that the substance in the packages was, in fact, bath salts, and petitioner was arrested on a later date and charged with possession with intent to deliver." Id.

[5] The lack of conviction on these counts does not negate the events of that day and their violent nature, that would independently be cause for concern even if Plaintiff were not a convicted felon.

The primary concern of the state in regulating firearm possession under its police power is to protect the safety of its citizens from harm perpetuated by firearms. Plaintiff argues that gun violence is more difficult to engage in with antique firearms than with modern firearms. Plaintiff does not argue that antique firearms are incapable of inflicting harm on others, and indeed they are. There is no apparent relevance to the fact that it would not be *as* easy for Plaintiff to engage in "gun violence" with an antique firearm as opposed to a modern firearm. The fact that antique firearms do not lend themselves to *mass* gun violence, due to the inability to fire more than one "projectile" (i.e., bullet) at a time and the slow process of reloading, is irrelevant. Likewise, the difficulty in shooting from concealment with an antique firearm is irrelevant. How *many* persons Plaintiff could potentially harm with an antique firearm, or the manner in which harm could be accomplished, is not the issue. If an antique firearm could harm even one person – which it can, and was routinely so used prior to the advent of modern firearms[6] – Plaintiff has not shown any difference between antique and modern firearms material to the state's interest that would necessitate a new inquiry.

The state's interest in preventing gun violence against any *one* of its citizens, from those who have shown a disregard for lawful conduct, is sufficient. This is evidenced in particular by the adoption and upholding of domestic-violence-misdemeanant possession bans, where the interest in preventing harm to even a single victim of domestic violence. U. S. v. Staten, 666 F.3d 154 (4th Cir. 2011). Accord Chester, 628 F.3d at *691 (Davis, J. concurring). Despite their functional differences, antique firearms can nonetheless harm a citizen just as a modern firearm can. As such, Plaintiff's claims are "too vague and unsubstantiated to remove his case from the

---

[6] According to the Defense Manpower Data Center (DMDC), which keeps data on U.S. Military personnel under the Department of Defense, the number of Civil War Army deaths alone, from what are now "antique firearms," is listed as 140,414. This does not count other, non-battle causes of death, or casualties from the Navy or Marines (available online at https://www.dmdc.osd.mil/dcas/pages/report_principal_wars.xhtml).

16

typical felon in possession case" and do not distinguish Plaintiff's factual circumstances as to bring him within the Second Amendment's scope of protections. Moore, 66 F.3d at 320.

Accordingly, there is little merit Plaintiff's claim that federal case law does not apply to him or to the West Virginia felon dispossession law because one contains an exception for antique firearms and one does not, because that technical distinction aside, the state's interest and concern is not sufficiently distinct.

### C. Third Cause of Action: 9th Amendment

In his third cause of action, Plaintiff asserts that by not exempting antique firearms from its felon dispossession law, West Virginia has violated Plaintiff's "Ninth Amendment Right to Subsistence Hunting." Pl.'s Compl. 8, ECF No. 1. This claim likewise fails.

The Ninth Amendment provides that "[t]he enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." U.S. Const. Amendment IX. The Ninth Amendment is regarded as conveying the Founder's fear that the Constitutional enumeration of some rights could be construed as inadvertently denying others.

At the outset, Plaintiff's assertion that he cannot subsistence hunt without the use of an antique firearm is flawed. Indeed, humankind engaged in subsistence hunting long before the advent of firearms. Plaintiff argues that "West Virginia law dispossessing the plaintiff class of antique firearms prevents them from legally harvesting a possible of two deer during the state's muzzle loader season." While that may be true, "muzzle loader season" is but one of a number of hunting seasons West Virginia has – including a specifically designated archery season.[7] Plaintiff thus has failed to show that his inability to possess an antique firearm precludes him from hunting in the first instance, which invalidates the basis on which he rests his overarching claim.

---

[7] See West Virginia Hunting Regulations on West Virginia Division of Natural Resources' website, DEER: Archery and Crossbow Seasons. Available online at https://www.wvdnr.gov/Hunting/Regs1617/Deer_Archery.pdf.

Even if that was not the case, Plaintiff's Ninth Amendment argument has been conclusively rejected. Circuits have rejected the argument that felon dispossession laws violate the Ninth Amendment. United States v. Baer, 235 F.3d 561 (10th Cir. 2000) (citing San Diego County Gun Rights Comm. v. Reno, 98 F.3d 1121, 1125 (9th Cir. 1996). Acord United States v. Finnell, 256 F.Supp.2d 493 (E.D.Va. 2003), Plaintiff's third claim accordingly fails.

### D. Fourth Cause of Action: Commerce, Privileges & Immunities, and Equal Protection Clauses

Plaintiff asserts in his fourth claim that West Virginia's felon dispossession law violates the Commerce Clause, Privileges and Immunities Clause, and the Equal Protection Clause of the United States Constitution. These claims likewise fail.

As to the Commerce Clause, there is no violation of the Commerce Clause by felon dispossession laws, and it is sufficient that the firearm was in interstate commerce at some time. Baer, 235 F.3d at 564. See also Finnell, 256 F.Supp.2d at 496. Regarding Plaintiff's Privileges and Immunities Clause assertion, there is no violation of the Privileges and Immunities Clause of the Fourteenth Amendment. McDonald, 561 U.S. at 754-759. Finally, the Equal Protection argument asserted by Plaintiff is without merit. United States v. Mills, 82 Fed.App'x 287, 290, 2003 WL 22794538 (4th Cir. 2003) (holding that those who "'are not a suspect class for equal protection purpose' [have] no fundamental right implicated when such an offender is deprived of the right to possess a firearm").

### III. CONCLUSION

For the foregoing reasons, the undersigned finds that Plaintiff has not rebutted the presumption that the lawful regulatory measure of longstanding prohibition on felon firearm possession is constitutional as applied to antique firearms. Given the undisputed facts, even when considered in the light most favorable to Plaintiff, he could not prevail.

## IV. RECOMMENDATION

For all the above reasons, the undersigned recommends Defendant's Motion to Dismiss (ECF No. 17) be **GRANTED**, and Plaintiff's Complaint (ECF No. 1) be **DISMISSED with prejudice.** Any party may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such report and recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to counsel of record.

Respectfully submitted this 19th day of July, 2017.

_____
MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE